UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ICE FLAKE MARITIME LTD.,

                              Plaintiff,                    07 Civ. 2002 (PKC)

              -against-

                                                           MEMORANDUM
                                                           AND ORDER

WESTCOAST AS, et al.,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J:

               Defendant Lofoten Pelagiske A/S ("Lofoten") moves to vacate or modify this

Court's March 13, 2007 Order of Maritime Attachment and Garnishment (Doc. #6) and

vacate the attachment of an electronic funds transfer ("EFT") in the amount of $177,660

("Attached Funds") held by American Express Bank.  When a maritime order of attachment is

challenged by a motion to vacate, Supplemental Rule E(4)(f) requires the party securing the

attachment, in this case, plaintiff Ice Flake Maritime LTD ("Ice Flake"), to show why it

should not be vacated.  Rule E(4)(f), Fed. R. Civ. P. Supp. ("plaintiff shall be required to

show why . . . attachment should not be vacated . . ."); Aqua Stoli Shipping Ltd. v. Gardner

Smith Pty Ltd., 460 F.3d 434, 445 n5 (2d Cir. 2006) ("Rule E(4)(f) clearly places the burden

on the plaintiff to show that an attachment was properly ordered . . . .").

               The Second Circuit has delineated the standards for a proper maritime

attachment:

               "[I]n addition to having to meet the filing and service
               requirements of Rules B and E, an attachment should issue if the
               plaintiff shows that 1) it has a valid prima facie admiralty claim
               against the defendant; 2) the defendant cannot be found within the

district; 3) the defendant's property may be found within the
district; and 4) there is no statutory or maritime law bar to the
attachment."

Id. at 445 (footnote omitted).


A Valid Prima Facie Admiralty Claim

      Lofoten challenges the existence of a valid prima facie admiralty claim.  Here,

the amended verified complaint ("Complaint") alleges that the plaintiff was the owner of the

vessel M/V ICE FLAKE that undertook to carry a cargo of frozen herring from Svolaer,

Norway to Ilyichevsk, Ukraine.  (Complaint, ¶ 7)  Defendant Westcoast AS ("Westcoast")

purchased the herring from Lofoten.  (Id. ¶ 9)  Because the herring was purchased FOB, it is

alleged that Lofoten was responsible for loading the herring on board the vessel.  (Id. ¶ 10)

The vessel experienced rough seas and developed a port list of 15 degrees as a result of the

shifting of substantial portions of the cargo.  (Id. ¶ 15)  During re-stowing, it was determined

that the cargo had been improperly prepared for shipment.  (Id. ¶ 19)  The Complaint alleges

that Lofoten owed a duty of care to the plaintiff in the shipment of the cargo, that the cargo

was not fit for carriage, and that it was dangerous or was not as described because it was not

properly packed for shipment.  (Id. ¶ 24-26)

      The claim is for damages to a vessel, occurring at sea as a result of the

negligent loading of cargo.  It is, on its face, an admiralty claim.  Plaintiff argues that it is not

a valid admiralty claim because, under federal law, the economic losses allegedly suffered by

plaintiff may only be recovered where plaintiff has suffered physical damage to its property

and the losses that flow from that damage.  See Robins Dry Dock & Repair Co. v. Flint, 275

U.S. 303 (1927).  But plaintiff has alleged with some factual support that there has been

physical damage to the vessel, specifically, damage to "air bags" (Complaint, ¶ 27) and "side

shorings" (Declaration of Gaute Kristian Gjelsten, ¶ 8), which would support the existence of some economic losses caused by physical damage.  However, without prejudging the choice of law analysis, which is not fully developed on this record, it is far from clear that federal law would be applied to the claim.  See State Trading Corp. of India, Ltd v. Assuranceforeningen Skuld, 921 F.2d 409, 416-17 (discussing the Lauritzen standard).  Plaintiff has made a plausible claim that Norwegian law will apply and economic losses are recoverable under that jurisdiction's law if there is negligence, damage and "a sufficient degree of proximity."  (Declaration of Gaute Kristian Gjelsten, ¶ 5-7)  Trial is scheduled to occur in Norway commencing November 5, 2007.  (Declaration of Ingar Fugelevåg, ¶ 7)

I acknowledge that there is some divergence in views on what level of scrutiny is appropriate to determine whether a valid admiralty claim is asserted.  See Dolco Inv., Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261, 266-67 (S.D.N.Y. 2007) (collecting cases and applying a prima facie standard).  Certainly, it is not the office of a motion to vacate a maritime attachment to examine a claim under Rules 12 or 56 of the Federal Rules of Civil Procedure.  See Aqua Stoli, 460 F.3d at 443 ("We think, however, that Congress chose a determinate rule rather than a flexible standard to ensure that attachments may be obtained with a minimum of litigation.").  By analogy, in considering whether subject matter jurisdiction exists over a federal claim, courts look to whether a claim facially falling within the court's jurisdiction is "immaterial," "insubstantial" or "frivolous."  Bell v. Hood, 327 U.S. 678, 682-83 (1946).  This claim is none of those.  Here, I comfortably conclude that the plaintiff has asserted a valid prima facie admiralty claim.

EFT Transfers "To" A Defendant

Defendant Lofoten notes that footnote 6 in Aqua Stoli calls into question the continued validity of Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002), familiarity with which is assumed.  Lofoten urges me to hold that that an EFT in the hands of an intermediary bank, which is destined for transfer to the defendant, is not the property of the defendant until the transfer is complete and, therefore, it may not be attached.

One judge has observed that the EFT at issue in Winter Storm was originated by the defendant and hence the holding should be construed as limited to that factual circumstance.[1]  See Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222 (S.D.N.Y. 2006) (concluding that an EFT in the hands of an intermediary bank and destined for transfer to defendant may not be attached).  I will remain with the majority of judges in this District in declining to depart from Winter Storm.  See General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd., 475 F. Supp. 2d 396, 398-99 (S.D.N.Y. 2007) (collecting cases that have declined to follow Seamar).  See also Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F.Supp.2d 399, 406 (S.D.N.Y. 2007) and Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., 2007 WL 1002265 *4 (S.D.N.Y. Apr. 4, 2007).  The facts before me regarding the EFT are not well developed and the presentation of legal arguments would not permit me to arrive at a result in which I would have confidence.[2]

---

[1] Plaintiff draws great comfort from Aqua Stoli's reading of Winter Storm as applying to EFTs both "to" and "from" a defendant.  Plaintiff points out -- and Lofoten's counsel who was also counsel in Aqua Stoli concedes -- that some of the EFTs in Aqua Stoli were in the hands of the intermediary on their way "to" the defendant. (Plaintiff Mem. at 10 n. 7; Lofoten R. Mem. at 10 n. 4)
[2] The declaration of Ingar Fugelevåg simply recites that the EFT "was originated by a non-party and named Lofoten as the beneficiary." (Id. ¶ 11).

The Amount of the Attachment

Finally, Lofoten argues that the amount of the order of attachment should be reduced. The Order permits attachment of up to $1,786,823.77. That amount is composed of the principal sum of $1,378,264.22, plus interest of $208,559.55 and estimated attorneys' fees and costs of $200,000. The Norwegian tribunal required a posting of $100,000 in costs by plaintiff against the contingency that Lofoten prevails. I am satisfied that this figure better approximates plaintiff's likely costs if it prevails and will reduce the permissible attachment by $100,000. There is also a $7,500 arithmetic error in plaintiff's calculation of the principal amount which it has not disputed. Hence, the total amount of Lofoten assets which may be attached is $1,686,823.77.

Conclusion

The motion of defendant Lofoten (Doc. #26) to vacate or modify the Order of attachment is DENIED, except that I grant the alternative relief of reducing the permissible amount of attachment to $1,686,823.77.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 11, 2007